No. 24-1036

# United States Court of Appeals for the Ninth Circuit

VINOD SODHA, AMEE SODHA,

*Plaintiffs–Appellants*,

v.

ROBINHOOD MARKETS, INC., VLADIMIR TENEV, JASON WARNICK, BAIJU BHATT, JAN HAMMER, PAULA LOOP, JONATHAN RUBENSTEIN, SCOTT SANDELL, ROBERT ZOELLICK, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., WELLS FARGO SECURITIES, LLC, MIZUHO SECURITIES USA LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., PIPER SANDLER & CO., ROSENBLATT SECURITIES INC., BMO CAPITAL MARKETS CORP., BTIG, LLC, SANTANDER INVESTMENT SECURITIES INC., ACADEMY SECURITIES, INC., LOOP CAPITAL MARKETS LLC, SAMUEL A. RAMIREZ & COMPANY, INC., SIEBERT WILLIAMS SHANK & CO., LLC,

*Defendants–Appellees*.

---

Appeal from the U.S. District Court for the Northern District of California
The Honorable Edward M. Chen (No. 3:21-cv-09767-EMC)

---

## DEFENDANTS–APPELLEES' PETITION FOR REHEARING *EN BANC*

---

Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Mark R. Conrad
Liz Kim
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 343-7100

*Attorneys for Defendants–Appellees Robinhood Markets, Inc., Vladimir Tenev, Jason Warnick, Baiju Bhatt, Jan Hammer, Paula Loop, Jonathan Rubenstein, Scott Sandell and Robert Zoellick*

(Additional Counsel Listed on Inside Page)

September 12, 2025

James N. Kramer
Alexander K. Talarides
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Jennifer Keighley
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Attorneys for Defendants–Appellees Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Citigroup Global Markets Inc., Wells Fargo Securities, LLC, Mizuho Securities USA LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., Piper Sandler & Co., Rosenblatt Securities Inc., BMO Capital Markets Corp., BTIG, LLC, Santander Investment Securities Inc., Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc. and Siebert Williams Shank & Co., LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT .......... 4

REASONS FOR GRANTING *EN BANC* REVIEW .......... 9

I. THE PANEL DECISION CONFLICTS WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT AND CREATES CIRCUIT SPLITS .......... 9

A. The Decision Conflicts with Supreme Court and Ninth Circuit Precedent Regarding Disclosure Obligations Under Section 11. .......... 9

B. The Decision Creates Splits with the First and Second Circuits on the Misleading Prong. .......... 13

C. The Decision Is Contrary to the Text of Item 303 and Creates Splits with the Fifth and Eleventh Circuits. .......... 15

II. THE PANEL DECISION INVOLVES ISSUES OF EXCEPTIONAL IMPORTANCE THAT, IF NOT REVERSED, WILL FUNDAMENTALLY ALTER PUBLIC COMPANY REPORTING OBLIGATIONS. .......... 17

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DeMaria v. Anderson*,
318 F.3d 170 (2d Cir. 2003) .......... 14

*Gallagher v. Abbott Labs.*,
269 F.3d 806 (7th Cir. 2001) .......... 17

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991) .......... 1, 8, 11, 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .......... 10

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) .......... 12, 13, 15

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) .......... 1, 11, 12, 13

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) .......... 16, 17

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) .......... 1, 10

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .......... 1, 10

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
297 F.3d 1182 (11th Cir. 2002) .......... 16, 17

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996) .......... 3, 7, 9, 13, 14

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017) .......... 14

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 9

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)....................18

**Statutes & Rules**

15 U.S.C. § 77k....................passim

15 U.S.C. § 77*l*....................5

15 U.S.C. § 77o....................5

Fed. R. App. P. 40(b)(2)....................3

**Other Authorities**

17 C.F.R. § 210.3-01....................17

17 C.F.R. § 229.105....................5

17 C.F.R. § 229.303....................5, 15, 16

17 C.F.R. § 240.10b-5....................19

17 C.F.R. § 240.13a-11....................18

17 C.F.R. § 240.13a-13....................17

17 C.F.R. § 249.308a....................4

SEC Form 8-K, https://www.sec.gov/about/forms/form8-k.pdf....................18

SEC Release No. 6835, 1989 WL 1092885 (May 18, 1989)....................15

U.S. Chamber of Commerce, *Unlocking America's Capital Markets* (June 3, 2025), available at https://www.uschamber.com/assets/documents/20250587_CCMC-CPSummit-PublicCompanyReport_FINAL.pdf....................19

## INTRODUCTION

This case presents extraordinarily important questions of securities law. Section 11 of the Securities Act of 1933 makes the omission of a "material fact" actionable only where there is a duty to disclose, such as to render a statement that was made "not misleading." 15 U.S.C. § 77k(a). The panel held, over a vigorous dissent, that issuers must disclose financial information that has become available since the last reported fiscal quarter based solely on whether investors would consider that information material—regardless whether the issuer's omission would render anything misleading and create a duty to disclose. That holding is contrary to the statutory text, reading the "misleading statement" element out of Section 11 and collapsing the test into one of materiality alone.

Not only does the decision ignore the plain text of the statute, it is contrary to binding precedent. The Supreme Court has repeatedly held that the securities laws "do not create an affirmative duty to disclose any and all material information." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). As the dissent recognized, Op. 80, the decision is also inconsistent with this Court's prior decisions. *See, e.g.*, *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991). In those cases, the Court affirmed dismissals of Section 11 claims based on

the nondisclosure of interim financial information and projections, without reaching materiality, "by considering the statements made, disclosures accompanying those statements, and the information available to the market." Op. 80.

Collapsing the distinction between whether an omission is misleading and materiality imposes an unworkable standard at war with the SEC's periodic reporting regime. By eliminating consideration of whether omitted information renders existing statements misleading, the panel requires companies to disclose all interim financial data investors might deem "material." But business results fluctuate, and historical results do not guarantee future performance. This is why the first step under Section 11 is to assess whether the registration statement is "misleading."

While the majority suggested that any distinction between "materiality and the duty to disclose" is merely "theoretical," Op. 26, the distinction is critical. The "misleading" requirement focuses courts on the actual statements made. The panel majority, in collapsing these elements, failed to consider the extensive disclosures Robinhood made in the registration statement for its July 2021 initial public offering ("IPO"). Robinhood disclosed that its results were down in June and part of July and explained why, provided an accurate estimated range for Q2 2021 revenues and accurately warned that revenues would likely decline in

Q3 2021. As both the district court and the dissent concluded, Robinhood's "extensive disclosures and warnings" meant that the omission of interim financial information did not render the registration statement misleading. Op. 63. Yet the panel reversed the dismissal of the complaint, concluding that plaintiffs may plead a violation of Section 11 by alleging only that the issuer did not disclose "material" interim information.

The decision also creates unjustifiable circuit splits. The majority acknowledged its departure from First Circuit precedent, which holds that while ordinary business fluctuations do not render statements of prior results misleading, an "extreme departure from the range of results which could be anticipated" based on the company's disclosures can be actionable as a "misleading statement" under Section 11. Op. 31; *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996). But the panel overlooked that its decision also creates a circuit split with the Fifth and Eleventh Circuits for liability under Item 303 of Regulation S-K, requiring disclosure of known trends and uncertainties.

This Court should grant rehearing *en banc* because the panel decision conflicts with the Supreme Court's and this Court's precedent and authoritative decisions of other circuits and decides questions of exceptional importance. Fed. R. App. P. 40(b)(2)(A)-(D).

## STATEMENT

Robinhood conducted its IPO in July 2021, following an extremely volatile period for financial markets and Robinhood's business. In January 2021, the stock market experienced unprecedented levels of volatility for GameStop and other "meme stocks" discussed prominently on social media. This activity and its abrupt end in February 2021 garnered extensive public attention. Shortly thereafter, trading volume and prices for certain cryptocurrencies, in particular, the "meme coin" Dogecoin, skyrocketed to historic peaks in April and May 2021, before dramatically declining in June and July 2021. These events were also well-publicized.

Consistent with SEC requirements, Robinhood's registration statement included financial statements for 2019 and 2020 and the first quarter of 2021 (ending March 31, 2021). At the time of the IPO filing in late July, Robinhood was not required to report its results for Q2 2021, due in mid-August. *See* 17 C.F.R. § 249.308a(a). Robinhood did, however, include extensive disclosures in the registration statement informing investors about indicators of a downturn in June and July 2021, providing an estimated range for Q2 2021 revenues (which proved accurate), and warning that it expected revenue to decline in Q3 2021. (*See, e.g.*, 2-ER-122-24, 2-ER-229.)

Plaintiffs are shareholders who brought a class action complaint alleging that Robinhood and certain Robinhood officers and underwriters violated Sections 11, 12 and 15 of the Securities Act of 1933,[1] 15 U.S.C. §§ 77k, 77*l* and 77o, on two grounds: (1) by omitting information that rendered Robinhood's offering documents misleading and (2) by violating Items 105 and 303 of Regulation S-K, 17 C.F.R. §§ 229.105, 303, which concern disclosure of risk factors and trends and uncertainties, respectively. (ECF 1.) Plaintiffs contend that Robinhood misled investors by not disclosing sufficient detail about certain interim financial information from June and part of July 2021, immediately before the IPO. Section 11 creates liability for omissions of "material fact" in registration statements where there is a duty to disclose, which can be proved in one of two ways: (1) if "necessary to make the statements therein not misleading" (the "misleading" prong) or (2) if "required to be stated therein" (the "required" prong). 15 U.S.C. § 77k(a).

The district court twice dismissed Plaintiffs' claims because nothing in Robinhood's offering documents was false or misleading, as the declines of certain interim financial metrics were neither "extraordinary" nor constituted a "trend" requiring out-of-period disclosure. The district court further concluded

[1] As the panel stated, these claims can be analyzed together under the Section 11 standard. Op. 24.

that Robinhood's disclosures sufficiently put investors on notice of any declines. (3-ER-548-50; 1-ER-22-24.)

In a published opinion by Judge Milan Smith, joined by District Judge Jed Rakoff (sitting by designation), with Judge Rawlinson dissenting in part and concurring in part, the panel vacated in part the district court's decision because the district court "applied the wrong legal standards to Section 11's 'misleading prong' and the Item 303 theory" and remanded so the district court "may re-evaluate those theories under the correct standards." Op. 46. The panel unanimously affirmed the district court's holding that Item 105 did not require disclosure of interim financial data. *Id.*

On the "misleading" prong, the panel majority acknowledged that this Court's precedents distinguish between whether information is material and whether its omission would mislead investors. Op. 26. Nevertheless, the majority held that this distinction collapses "in cases like this one," *id.*—where a company discloses historical financial results that relate to later internal interim financial information, Op. 28. Of course, this will be the case for any company conducting an IPO because, no matter the timing of the filing, the company will necessarily have some internal financial information about the interim period since the last reported quarter. The majority declined to consider whether the omission here rendered Robinhood's statements misleading, concluding the district court needed

to consider only whether the interim information is "material." Op. 29. The panel remanded for the district court to conduct the materiality inquiry. Op. 33.

The majority expressly rejected the First Circuit's approach in *Shaw*, which the district court had followed. Op. 30-33. In *Shaw*, the court held that the omission of intra-quarter data is misleading under Section 11 only where it "indicat[es] some substantial likelihood that the quarter would turn out to be an extreme departure from publicly known trends and uncertainties." 82 F.3d at 1211. The majority disagreed, noting courts' familiarity with the materiality standard and reasoning that the *Shaw* standard is "far less administrable" because it "leaves too many open questions." Op. 32. The majority asserted that by "collapsing the duty to disclose into materiality, we make the securities law in this circuit clearer and more predictable." *Id.*

As to Item 303, the majority held that the district court erred in focusing on the alleged "trends" under Item 303 and whether such trends were "sufficiently persistent." Op. 35. The panel further determined, based on commentary in a 1989 SEC release, that Item 303 "requires quantification of the disclosed uncertainties to the extent reasonably practicable, and [that] Item 303 imposes a different standard for disclosure than Section 11's 'misleading' prong." *Id.*

Judge Rawlinson dissented in relevant part on the ground that the majority's disregard of the "misleading" prong was contrary to Ninth Circuit precedent. For example, *Convergent Technologies*, as Judge Rawlinson described, assessed whether the offering documents were misleading, including by "considering the statements made, disclosures accompanying those statements, and the information available to the market." Op. 80 (citing *Convergent Techs.*, 948 F.2d at 512, 515).

Applying Ninth Circuit precedent, Judge Rawlinson summarized Robinhood's "extensive disclosures and warnings," Op. 47-63, from which she determined "the statements in the prospectus were not misleading" given "the disclaimers and the information existing in the market of investors," Op. 80. Robinhood disclosed, for example, that:

- "[t]rading activity was particularly high during the first two months of [Q2 2021]" but had "return[ed] to levels more in line with prior periods during the last few weeks of [Q2 2021]," Op. 50 (quoting 2-ER-123); and

- Robinhood expected its "revenue for [Q3 2021] to be lower, as compared to [Q2 2021], as a result of decreased levels of trading activity relative to the record highs in trading activity, particularly in cryptocurrencies, during [Q2 2021], and expected seasonality," Op. 50 (quoting 2-ER-229).

Judge Rawlinson also observed that, at the time of Robinhood's IPO, "the marketplace was abuzz with talk of Robinhood and its novel approach to

investments, including the concomitant risks." Op. 98. She concluded that "Plaintiffs were acutely aware of the volatility of market events impacting Robinhood's business operations, and their losses were not caused by any failure to disclose on the part of Robinhood." Op. 102.

Although she believed this Court's "precedent dictates the outcome of the case," Judge Rawlinson further disagreed with the majority's characterization of *Shaw* as "far less administrable." Op. 107 n.5. She observed that the *Shaw* standard is "much closer to the intent of the statute than collapsing the analysis … into one mushy 'materiality' standard." *Id.*

As to Plaintiffs' Item 303 theory, Judge Rawlinson believed the majority decision read the SEC regulation too broadly. In particular, she observed that the majority departed from *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998), which limited Item 303 liability to "known trends." Op. 89.

## REASONS FOR GRANTING *EN BANC* REVIEW

## I. THE PANEL DECISION CONFLICTS WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT AND CREATES CIRCUIT SPLITS.

### A. The Decision Conflicts with Supreme Court and Ninth Circuit Precedent Regarding Disclosure Obligations Under Section 11.

*En banc* review is warranted because the panel's ruling conflicts with Supreme Court and Ninth Circuit precedent, under which the securities laws do not require disclosure of *all* material information.

The Supreme Court has repeatedly held that whether an omission is misleading and materiality are separate elements because the securities laws' prohibition against false and misleading statements "do[es] not create an affirmative duty to disclose any and all material information." *Macquarie*, 601 U.S. at 264 (quoting *Matrixx*, 563 U.S. at 44). This distinction is compelled by Section 11's text, which provides that the omission of a "material fact" is actionable only if it is "required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). While *Macquarie* and *Matrixx* involved claims under Section 10(b)(5) of the Securities Exchange Act of 1934, their holdings apply equally here because, as the majority acknowledges, "focusing on the 'misleading' prong, the relevant language is nearly identical" to that in Section 11. Op. 27 n.3. Likewise, this Court has recognized, in a case with both Section 10(b) and 11 claims, that "[t]he materiality of information is different from the issue of whether a statement is false or misleading"; "not all adverse events would be material and, more importantly, [] not all material adverse events would have to be disclosed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012).

The panel decision also directly conflicts with Ninth Circuit precedent, which analyzes whether an omission is misleading and materiality separately in assessing a company's Section 11 disclosure obligations with respect

to interim financial information. In *Convergent Technologies*, as Judge Rawlinson explained, this Court applied the "misleading" prong by considering the information available to investors, including existing disclosures and publicly available information, to determine that the company had no obligation to disclose interim projections because those projections did not render any statements in the prospectus misleading. Op. 80 (citing *Convergent Techs.*, 948 F.2d at 512, 515). Several years later, in *Worlds of Wonder*, this Court applied *Convergent Technologies* to interim results. 35 F.3d at 1418-19. There, the plaintiffs alleged a Section 11 violation from a company's failure to disclose, at the time of the IPO, that its performance in the not-yet-complete quarter lagged behind prior quarters and the company's internal business plan. *Id.* In that circumstance, the company had "no duty to disclose the precise extent of the anticipated revenue drop" in the interim quarter because "the prospectus clearly warned that [the company] expected lower net sales" such that reasonable investors would not have been misled, *id.* at 1419, just as Robinhood warned it expected lower trading activity in Q2 2021 and declining revenue for Q3 2021, Op. 50 (quoting 2-ER-123, 2-ER-229).

The panel's conclusion that neither *Convergent Technologies* nor *Worlds of Wonder* applies here because they did not involve interim results is incorrect. Op. 29-30. In *Worlds of Wonder*, where the IPO took place in the last

month of a quarter, this Court applied *Convergent* and explicitly considered the omission of interim *results*, including the "disappointing" sales in the "first two months" of the quarter. 35 F.3d at 1418-20. Because the company disclosed that it expected lower sales for the quarter (based on the interim results), *id.* at 1419, the Court held that the omission of interim results for the two months did not render the statements made misleading. This is closely analogous to the facts here, and the panel's misreading of *Worlds of Wonder* cannot justify disregarding this law of the circuit.

Moreover, the majority misconstrued *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259 (2d Cir. 1993). Op. 27-29. *Time Warner* did not hold that materiality alone suffices; it held instead that "where the disclosure duty arises from the combination of a prior statement and a subsequent event, which, *if not disclosed, renders the prior statement false or misleading*, the inquiries as to duty and materiality coalesce." *Time Warner*, 9 F.3d at 267 (emphasis added). In assessing when "duty and materiality coalesce," *Time Warner* focused on a specific context: where a prior statement (*e.g.*, we are pursuing a particular business plan) is directly contradicted by an undisclosed subsequent event (*e.g.*, an alternative business plan is under active consideration). *Id.* That is not the case here. Plaintiffs do not allege that any subsequent interim information contradicted Robinhood's report of its historical financial results or rendered that report

inaccurate. Rather, Plaintiffs allege that Robinhood's historical financial results *implied* that its strong performance would continue. But because the direct contradiction present in *Time Warner* is missing here, whether the omission of interim financial information rendered prior statements misleading depends on an examination of the *totality* of what Robinhood disclosed (including estimates of Q2 2021 revenue and warnings of decline in Q3 2021 alongside the historical information). *See Worlds of Wonder*, 35 F.3d at 1418-19. In these circumstances, the questions of materiality and whether an omission renders a prior statement misleading *cannot* coalesce, as discussed below regarding interim results.

### B. The Decision Creates Splits with the First and Second Circuits on the Misleading Prong.

The majority's ruling conflicts with decisions in the First and Second Circuits, which assess whether omitted interim financial information renders disclosures misleading under Section 11, further warranting *en banc* review.

The panel explicitly rejected *Shaw*, in which the First Circuit held that interim results need only be disclosed where they "indicat[e] some substantial likelihood that the quarter would turn out to be an extreme departure from publicly known trends and uncertainties." 82 F.3d at 1210. While the First Circuit "reject[ed] any bright-line rule," it suggested this standard as a way to balance recognition that "[r]easonable investors understand that businesses fluctuate, and

that past success is not a guarantee of more of the same," with recognition that in "extreme" cases, "the nondisclosure of interim facts [may] render[] the prospectus materially incomplete." *Id*. The majority here rejected this approach, instead concluding that "the proper test for the duty to disclose is the test for materiality." Op. 31. But this would read the words "necessary to make the statements therein not misleading" out of the statute.

Moreover, the decision is inconsistent with Second Circuit law on the duty to disclose interim results. While the Second Circuit has declined to apply *Shaw*'s "extreme departure" standard, it has nevertheless properly considered whether an omission renders the offering documents misleading separately from whether the omitted information is material. For example, in *DeMaria v. Anderson*, 318 F.3d 170, 180-81 (2d Cir. 2003), the Second Circuit held that the omission of interim results was not misleading, and need not be disclosed, because the omitted information did not indicate a "dramatic reversal" in revenue growth—an inquiry separate from materiality. Later, in *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38-39 (2d Cir. 2017), the Second Circuit analyzed the issuer's disclosures regarding historical financial results and determined the undisclosed interim results did not render the historical statements as a whole misleading. In both cases, the Second Circuit affirmed the dismissal of the Section 11 claim, without applying its

prior decision in *Time Warner*, which as discussed above involved a direct contradiction rather than implications from interim data.

Thus, the First and Second Circuits agree that an omission of interim financial information is actionable under the "misleading" prong only if it renders the statements actually made misleading.

### C. The Decision Is Contrary to the Text of Item 303 and Creates Splits with the Fifth and Eleventh Circuits.

*En banc* review is also warranted on the panel's treatment of disclosure obligations under Item 303 and the "required" prong of Section 11. As relevant here, Item 303 requires disclosure of "known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). The panel departed from the text of Item 303 in two critical respects.

*First*, as Judge Rawlinson highlighted, Op. 105-07, Item 303 says nothing about quantifying the likely impact of a trend or uncertainty. *See* 17 C.F.R. § 229.303(b)(2)(ii). Nevertheless, the majority relied on an example about Superfund cleanup costs from a 1989 SEC interpretive release to hold that the effects of a trend "must be quantified to the extent reasonably practicable." Op. 41 (citing SEC Release No. 6835, 1989 WL 1092885, at *6 (May 18, 1989)). In so

doing, the majority imposed an obligation on issuers not found in the text of the rule.

*Second*, the majority read the word "events" into the rule and then used it to construe the term "trends and uncertainties." Op. 38. The term "events" appears only in a separate sentence of Item 303, relating to "a material change in the relationship between costs and revenues," which is not at issue here. *See* 17 C.F.R. § 229.303(b)(2)(ii). In so doing, the majority expanded the mandatory disclosures under Item 303 beyond the rule's text to encompass one-time "events" affecting revenues or income.

The panel also created a circuit split regarding disclosure obligations under Item 303. The Eleventh Circuit held in *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002), that Item 303 requires disclosure in two circumstances, neither of which exists here: (1) where an "observed pattern accurately reflects persistent [business] conditions," *id.* at 1191, and (2) where interim financial information "suddenly and significantly decline[s]" from previously reported periods, *id.* at 1192. The Fifth Circuit followed *Oxford* in *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 217-20 (5th Cir. 2004). The panel decision conflicts with *Oxford* and *Kapps* on both points. *See* Op. 35-37, 42.

The Fifth and Eleventh Circuits explained that Item 303's purpose is to avoid *misleading* investors: "[t]he obvious focus [of Item 303(a)(3)(ii)] is on

preventing the latest reported results from misleading potential investors, thereby promoting a more accurate picture of the registrant's future prospects." *Kapps*, 379 F.3d at 219 (quoting *Oxford*, 297 F.3d at 1192). The majority's holding that "Section 11's 'misleading' prong and Item 303 use substantially different standards," Op. 41, is directly contrary to this reasoning.

## II. THE PANEL DECISION INVOLVES ISSUES OF EXCEPTIONAL IMPORTANCE THAT, IF NOT REVERSED, WILL FUNDAMENTALLY ALTER PUBLIC COMPANY REPORTING OBLIGATIONS.

The panel's holding that public companies are required to disclose *all* material interim information if it relates in any way to a prior disclosure threatens to dismantle the existing periodic reporting system and poses significant risks to long-settled expectations and practices in U.S. capital markets.

The SEC requires public companies to file financial statements, on Form 10-Q, on a quarterly basis. 17 C.F.R. § 240.13a-13(a). Likewise, for public offerings, the SEC requires companies to provide balance sheets for the last two years and the most recent quarter. *Id.* § 210.3-01. Congress and the SEC have deliberately declined to adopt a system of continuous disclosure, which would bury investors with too much information. *See Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001) (holding there is no "absolute duty to disclose all information material to stock prices as soon as news comes into their possession"

because "[w]e do not have a system of continuous disclosure" and consequently "firms are entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose"). Instead, the SEC has required only certain types of "significant" information to be reported (on Form 8-K) in real time, which does not include interim financial information. *See* 17 C.F.R. § 240.13a-11; SEC Form 8-K, https://www.sec.gov/about/forms/form8-k.pdf.

The decision upends the periodic reporting system. At any given time, a company will typically have real-time data post-dating its last reported quarterly results. The implication of the panel decision is that issuers may feel required to disclose up-to-the-minute granular and interim information (even if incomplete, and before the company has closed its books for the quarter and had its financial statements reviewed by independent accountants) if there is a risk that this information could be deemed material. As the Supreme Court has observed, the "determination [of materiality] requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976). A disclosure standard based only on materiality, divorced from a duty to disclose, does not "make the securities law in this circuit clearer and more predictable." Op. 32. Far from it: the "delicate assessments" of materiality would leave companies without workable guidance and risk over-disclosure.

By exposing issuers to liability based solely on assessments of materiality, the decision risks discouraging companies from going public. The number of public companies has already fallen by half since the late 1990s. *See* U.S. Chamber of Commerce, *Unlocking America's Capital Markets* 2 (June 3, 2025).[2] Capital markets need administrable rules to function. The unworkable requirements created by this decision, if not reversed, will deter new and growing companies, including those spearheading technological innovation in Silicon Valley, from undertaking IPOs.

The decision's impact extends beyond IPOs. Public companies, which are all required to disclose past historical results, now risk liability based on materiality alone unless they add up-to-the-minute interim financial information, as "the relevant language is nearly identical in Rule 10b-5 and Section 11." Op. 27 n.3; *see* 17 C.F.R. § 240.10b-5(b). This risk would inhere in every Form 10-Q filing, as companies typically have extensive information about their operations and results following the end of the quarter but before the Form 10-Q filing.

The far-reaching consequences of the panel's decision for the SEC's periodic reporting system, IPOs, issuers and investors counsel strongly in favor of

[2] *Available at* https://www.uschamber.com/assets/documents/20250587_CCMC-CPSummit-PublicCompanyReport_FINAL.pdf.

rehearing the panel decision *en banc* to restore this Court's precedents on the duty to disclose.

## CONCLUSION

The Petition for Rehearing *En Banc* should be granted.

September 12, 2025

Respectfully submitted,

/s/ Antony L. Ryan
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Mark R. Conrad
Liz Kim
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 343-7100

*Counsel for Defendants–Appellees Robinhood Markets, Inc., Vladimir Tenev, Jason Warnick, Baiju Bhatt, Jan Hammer, Paula Loop, Jonathan Rubenstein, Scott Sandell and Robert Zoellick*

James N. Kramer
Alexander K. Talarides
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Jennifer Keighley
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Attorneys for Defendants–Appellees Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Citigroup Global Markets Inc., Wells Fargo Securities, LLC, Mizuho Securities USA LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., Piper Sandler & Co., Rosenblatt Securities Inc., BMO Capital Markets Corp., BTIG, LLC, Santander Investment Securities Inc., Academy Securities, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc. and Siebert Williams Shank & Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 12, 2025. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Liz Kim
Liz Kim

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-1036

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,198 **.**
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Liz Kim **Date** 09/12/2025
*(use "s/[typed name]" to sign electronically-filed documents)*